IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MIKE BURRITT, | ) Civil No.: 3:10-cv-01197-JE |
| Plaintiff, | )<br>) FINDINGS AND<br>) RECOMMENDATION |
| v. | )<br>) |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | )<br>)<br>) |
| Defendant. | )<br>) |

    Rory Linerud
    Linerud Law Firm
    PO Box 1105
    Salem, OR 97308

        Attorney for Plaintiff

    Dwight C. Holton, U.S. Attorney
    Adrian L. Brown, Asst. U.S. Attorney
    1000 S.W. 3rd Avenue, Suite 600
    Portland, OR 97204

FINDINGS AND RECOMMENDATION – 1

Benjamin Groebner
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

    Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Mike Burritt brings this action against the Commissioner of Social Security (the Commissioner) pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Plaintiff seeks an Order reversing the decision of the Commissioner and remanding the action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, Plaintiff asks that the action be remanded for further proceedings.

For the reasons set out below, the decision of the Commissioner should be affirmed.

**Procedural Background**

Plaintiff filed applications for SSI and DIB on July 10, 2006, alleging that he had been disabled since August 20, 2003. After the claims were denied initially and upon review, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). A hearing set for May 7, 2009 before ALJ John Madden, Jr. was continued in order for additional evidence to be obtained and no testimony was taken. A hearing was then held on June 1, 2009 at which Plaintiff and Mark McGowan, a Vocational Expert (VE), testified.

FINDINGS AND RECOMMENDATION – 2

In a decision dated October 30, 2009, ALJ Madden found that Plaintiff was not disabled within the meaning of the Social Security Act (the Act). That decision became the final decision of the Commissioner on September 15, 2010 when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff seeks judicial review of that decision.

## Factual Background

Plaintiff was born on December 1, 1973 and was 35 years old at the time of the hearing before the ALJ. He has a high school education and has past relevant work as a transportation equipment painter and landscape laborer.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled.

If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

<u>Step Three</u>.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

<u>Step Four</u>.  The Commissioner determines whether the claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

<u>Step Five</u>.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  <u>Tackett</u>, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  <u>Id.</u>

## Medical Record

The medical record establishes that Plaintiff has or has had numerous medical problems. These include obesity, degenerative disc disease, chronic pain associated with psychological factors, surgery to address disc herniation in February 2004 and two surgeries in June of 2005 to address a recurrence of the disc herniation. The medical record also indicates that Plaintiff has a history of narcotic dependence and cannabis abuse and suffers from Addictive Disease. I will address the medical record and Plaintiff's medical problems only as is relevant to the parties' contentions.

## Testimony

1. **Plaintiff**

Plaintiff testified as follows at the hearing before the ALJ:

In August of 2003, Plaintiff suffered a back injury on the job while lifting trees into a trailer. He underwent surgery in 2004 and, after aggravating his injury, underwent a second and third surgery in 2006. He has never improved since the 2006 surgery. He experiences burning leg pain, primarily in the right leg but also in the left; numbness in his legs and feet, primarily his right foot; and weakness in his right side which causes his leg to give out without any warning. Depending on how active he is, his leg can give out as often as daily. This occurs any time he is on his feet.

Plaintiff can walk "maybe a block" at a time. Some days he can sit for 15 to 20 minutes at a time and some days up to an hour before he has to change his position by standing. Plaintiff is in his bed or on the couch "pretty close" to all day. He lives with his fiancée who helps him get dressed and bathe.

For three months in 2005, Plaintiff worked pumping gas at a gas station until he was fired. Almost every day while working his legs would give out or he would experience so much pain that he would have to stop work. After "really bad days" he would take two or three days off and missed one or two days a week.

Plaintiff also worked one three-hour shift at Arby's sometime after 2005. He had to sit in a chair during his shift and left after three hours because he was in so much pain.

Plaintiff takes Percocet for pain. At the time of the hearing, he had not used marijuana for at least six or seven months. He had only used methamphetamines once "eons ago."

Plaintiff has had suicidal thoughts, feels like he is "worthless," and takes medicine for depression. He was trying to figure out what "is best for [him] because what [he's] taking right now . . . doesn't seem to work." He was seeing a psychiatrist for medications and to talk. At the time of the hearing Plaintiff was scheduled to see a doctor for pain management.

2. **<u>Vocational Expert's Testimony</u>**

The ALJ posed a hypothetical describing an individual with Plaintiff's age, education and vocational background who could perform sedentary work with no manipulative, visual or communicative limitations but who, because of narcotics usage, must avoid hazardous or dangerous machinery. The VE testified that such an individual could not perform any of Plaintiff's past relevant work but could work as a semi-conductor assembler, an information clerk or a small products assembler.

The second hypothetical posed by the ALJ described an individual with sedentary levels of standing, walking and sitting but who could lift 20 pounds occasionally and 10 pounds frequently, who had the same limitations as to dangerous machinery and unguarded heights as in the first hypothetical and who should avoid all vibrations. Based upon use of medication, the

hypothetical also limited the individual to short, simple, primarily unskilled tasks that required no more than occasional contact with the general public.  The VE testified that such an individual would not be able to perform any of Plaintiff's past relevant work and would not be able to perform the information clerk job listed in response to the first hypothetical but could perform the semi-conductor assembler and small products assembler jobs and could work as an electronics assembler.

The VE also testified that an individual who was reclining on a seven-day basis, seven to eight hours per day would not be able to perform even part-time work.

## ALJ's Decision

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 20, 2003, the date of the alleged onset of his disability.

At the second step, the ALJ found that Plaintiff's "severe" impairments included degenerative disc disease of the lumbar spine, depression, PTSD, cannabis dependence, prescription medication dependence and obesity.

At the third step, the ALJ found that, alone or in combination, these impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ next assessed the Plaintiff's residual functional capacity.  He found that Plaintiff retained the ability

> to lift 20 pounds occasionally and 10 pounds frequently; he could stand and walk two hours total in an eight-hour day; he could sit for six hours total in an eight-hour day he is able to push and pull consistent with light weights; he is limited to simple repetitive work; and he is limited to only occasional public contact.

In formulating this assessment, the ALJ found that Plaintiff's statements concerning "the intensity, persistence and limiting effects of those symptoms that may be attributed to his 'severe' impairments" were not credible to the extent that they were inconsistent with the RFC assessment.

At the fourth step of his analysis, the ALJ found that Plaintiff could not perform any of his past relevant work.

At the fifth step, the ALJ found that Plaintiff could work as an electronics assembler, an assembler of semiconductors, and a small products assembler. Accordingly, he found that Plaintiff was not disabled within the meaning of the Act.

### Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ reached an erroneous residual functional capacity (RFC) determination by failing to adequately account for restrictions described by physicians upon whose opinions he relied, failed to pose complete, clear and proper hypotheticals to the VE, relied on erroneous VE testimony and erred in not alternatively considering whether Plaintiff was disabled for a closed period of time.

I. **ALJ's RFC**

As the Commissioner correctly notes, the ALJ is responsible for determining a claimant's residual functional capacity. 20 C.F.R. § 404.1546; SSR 96–5p. In doing so, the ALJ is required to consider the record as a whole, and to explain the weighing of the medical evidence and testimony concerning the claimant's residual functional capacity. SSR 96–5p. In analyzing a claimant's residual functional capacity, an ALJ may consider whether a claimant's subjective complaints lack credibility, Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005), and need not include opinion evidence that is properly discounted. Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

A. Hazards and Vibrations Restrictions

Plaintiff contends that in determining his RFC, the ALJ failed to incorporate several functional restrictions "that were established by the physicians [on] whom the ALJ relied when

FINDINGS AND RECOMMENDATION – 9

assessing [Plaintiff's] work capacity." Specifically, Plaintiff contends that State agency physicians Mary Ann Westfall and Richard Alley found that Plaintiff should be restricted from hazards and vibrations. While the ALJ incorporated these restrictions into one of the hypotheticals presented to the VE at hearing, these restrictions were not included in the ultimate determination of Plaintiff's RFC. Plaintiff argues that if these restrictions had been adopted, he would be unable to perform the jobs found suitable by the ALJ and it was error for the ALJ to omit these restrictions without any medical expertise or medical authority.

      I disagree. The ALJ here considered the record as a whole and explained in detail his analysis of the medical evidence and testimony. The ALJ weighed Dr. Westfall's opinion regarding limitations as to hazards and vibrations with the medical opinions of numerous treating and examining physicians and with Plaintiff's past work history.

      The ALJ concluded that an RFC of sedentary-light work with restrictions on task complexity and public contact was consistent with a record that shows Plaintiff "to have very poor credibility, with evidence of symptom embellishment and narcotic-seeking behavior." The ALJ explained his evaluation of the evidence and provided sufficient support for his decision to exclude the hazards and vibrations restrictions in his RFC, citing specifically to numerous medical reports throughout the record, including those discussed below.

      State agency reviewing physician Dr. Westfall opined that Plaintiff should avoid all exposure to hazards while using marijuana and narcotic medications and that exposure to vibration "would be expected to worsen his failed back, and could lead to objective worsening of his condition." This opinion was subsequently affirmed on review by Dr. Richard Alley.

      Dr. James Nelson treated Plaintiff for his back pain between February 2006 and January 2007 and had repeated discussions with Plaintiff regarding overuse of narcotics and the need for

FINDINGS AND RECOMMENDATION – 10

Plaintiff to increase his activity.  In notes of a visit on August 9, 2006, Dr. Nelson remarked that Plaintiff became contentious during a discussion of his use of narcotics.  In notes of a visit on December 20, 2006, Dr. Nelson observed that Plaintiff had "striking findings of somewhat hyper-responsive findings to any, even minor injury."

On April 20, 2007, Plaintiff was examined by Independent Medical Examiner Dr. Richard Matteri.  Dr. Matteri diagnosed Plaintiff with failed back syndrome and multilevel lumbar degenerative disease but also noted that Plaintiff displayed considerable exaggerated and embellished pain behavior and possible drug seeking behavior.

Neurosurgeon Dr. Thomas Dietrich conducted an Independent Medical Exam of Plaintiff on October 13, 2008.  Dr. Dietrich's diagnoses included degenerative lumbar disease and chronic pain syndrome; however, he noted that there were no truly objective findings to support Plaintiff's pain complaints at that time.

Neurologist Dr. David Silver conducted an Independent Medical Exam of Plaintiff on March 11, 2009.  He opined that there were no objective findings that supported Plaintiff's major complaint of low back pain and that Plaintiff's visits to the emergency room seemed to have been triggered by lack of narcotic medication.

On May 19, 2009, Dr. Gary Olbrich, a pain and addiction specialist examined Plaintiff and diagnosed him with Addictive Disease.  Dr. Olbrich opined that Plaintiff "spends an inordinate amount of time acquiring . . . opiates;" exhibits exaggerated pain behaviors and has probable secondary gain issues.

The ALJ noted that Plaintiff's providers released him to what was described as either light or sedentary work in 2006 and that his post-surgical providers declined to limit him at all, instead recommending exercise and "to get on with his life including work activities."  The ALJ

concluded that a limitation to sedentary work "in its key element" would address the objective findings of Plaintiff's degenerative disc disease and would "go far in accommodating any reasonable issues of pain of whatever origin."

The ALJ also noted that Plaintiff had been able to work while using marijuana and methamphetamines. In 2009, Plaintiff reported to multiple providers that he had used marijuana regularly over the past ten to twelve years and had held a medical marijuana card for the last two years. Although he testified at the hearing before the ALJ that he had used methamphetamines only once, during his Agency referred psychodiagnostic exam with Dr. William Trueblood Plaintiff reported methamphetamine use "off and on" between 1996 and 2003.

The ALJ concluded that Plaintiff's work history showed that he was capable of sustained, full-time activity despite polysubstance abuse. He noted that Plaintiff maintained employment at a motorcoach manufacturer for a year and a half in 2001 while he was, by his own reports, using alcohol, marijuana and methamphetamines and had not left this job because of mental or physical incapacity. The ALJ also noted that Plaintiff's earnings record indicated that he had been capable of performing substantial gainful activity. After thoroughly addressing factors such as Plaintiff's credibility, history of drug use, and record of symptom embellishment, the ALJ concluded that the "limited mental and physical demands of the claimant's residual functional capacity would address his valid concerns, and allow him to work on a regular and continuing basis." The ALJ's decision to not include the hazards and vibrations restrictions was amply supported by the record and his reasoning was sufficiently explained.

B. Mental Residual Functional Capacity

Plaintiff also contends that the ALJ failed to fully incorporate the restrictions in mental functional capacity set forth in the opinions of State agency reviewing psychologists Bill

Hennings, Ph.D. and Frank Lahman, Ph.D. In an October 9, 2006 Mental RFC Assessment ("MRFC"), Dr. Hennings indicated that Plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors. Dr. Hennings also opined that

> CLMT self reports anxiety and irritability, difficulty in social situations, self imposed isolation, and has demonstrated combative and contentious presentation when advised to dc narcotic use by TS. For these reasons it is recommended his work activities limit interaction with the general public to occasional, and that supervisors use gentle, careful tactics when providing instruction or criticism in the workplace, removing CLMT from immediate observation of others before discussing work issues with him. However, this would be within the scope of normal supervision.

Dr. Hennings' MRFC was subsequently affirmed by Dr. Lahman on February 15, 2007.

Plaintiff argues that the ALJ was required to adopt the entirety of Dr. Hennings' and Dr. Lahman's opinions and pose hypotheticals to the VE that incorporated the limitations involving supervisors.

The Commissioner argues that the ALJ properly accounted for the opinions of Drs. Hennings and Lahman and was not required to include the recommendations made by Dr. Hennings based on the limitations he assessed. I agree. Dr. Hennings' assessment, which was subsequently reviewed by and affirmed by Dr. Lahman, indicated that Plaintiff was only moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors. In addition, Dr. Hennings noted that even the higher degree of care he recommended supervisors use in providing instruction or criticism to Plaintiff would be within the scope of normal supervision. Dr. Hennings' recommendations in this regard are based upon Plaintiff's self reports of anxiety and difficulty in social situations and his demonstrated combativeness and contentiousness when advised to discontinue narcotics use. Dr. Hennings'

FINDINGS AND RECOMMENDATION – 13

assessment and the assessments of other treating and examining physicians otherwise reflect that Plaintiff presented as pleasant and articulate with appropriate affect. The ALJ's conclusion that Plaintiff's mental impairments were adequately addressed by limiting him to simple and routine tasks and only occasional public contact was supported by both his determination that Plaintiff's self-reports were not entirely reliable and by his evaluation of the medical record as a whole. His RFC assessment met the applicable standards without the inclusion of the additional limitations Plaintiff asserts were required.

II. **Vocational Hypothetical**

Plaintiff argues that in omitting Dr. Hennings' supervisory recommendations discussed above the ALJ failed to pose a vocational hypothetical that included all of his limitations. An ALJ's vocational hypothetical must set out all of a claimant's impairments, and a VE's testimony that a claimant can perform certain work has no evidentiary value if the hypothetical does not meet this requirement. E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

The ALJ's hypothetical here included all of the limitations that the ALJ found were credible and supported by substantial evidence in the record. As discussed above, the ALJ provided sufficient support for his assessment of Plaintiff's mental residual functional capacity. Under these circumstances, the VE's testimony had evidentiary value and the ALJ was entitled to rely upon on that testimony in reaching a disability determination.

Plaintiff also contends that the VE provided and the ALJ relied upon erroneous testimony concerning the jobs Plaintiff could perform. Plaintiff argues that the three jobs the VE identified were inappropriate because they were inconsistent with the hazards and vibrations restrictions that should have been included in Plaintiff's RFC. As noted above, the ALJ included these restrictions in his hypotheticals but not in Plaintiff's RFC.

The Commissioner argues that while the jobs cited by the VE may involve the use of tools or machinery, they do not require it and the Dictionary of Occupational Titles ("DOT") specifies that conditions such as vibration or moving mechanical parts are not present when performing these occupations. Thus, the Commissioner argues, Plaintiff has not shown that the job duties are inconsistent with the ALJ's vocational hypothetical.

Despite being included in the ALJ's hypotheticals, the hazards and vibrations limitations were not ultimately part of Plaintiff's RFC. As discussed above, the ALJ's decision to exclude these limitations was sufficiently supported by the record and his RFC assessment met the applicable standards. I find that even if the VE erred in concluding that the Plaintiff could perform the jobs cited with hazards and vibrations limitations imposed, the error was harmless. See e.g., Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006) (mistake that is not prejudicial or is irrelevant to ALJ's ultimate conclusion as to disability is harmless).

III. **Disability for a Closed Period of Time**

Plaintiff underwent low back surgeries on February 2, 2004; June 22, 2005 and June 23, 2005. Plaintiff argues that the ALJ "improperly ignored evaluating whether Plaintiff proved he was disabled for a closed period of time" even after Plaintiff requested that the ALJ consider, at a minimum, that he had proved disability following his surgeries. Plaintiff asserts that the ALJ stated that

> "No physician finds the claimant to be limited to the extent he alleges since at least 2005, apart from post-surgical periods. . . . [Plaintiff] is found capable of work at some level."

(Plaintiff's Brief at 17). Plaintiff argues that this statement establishes that he was unable to work from October of 2003 until sometime after June of 2005. I disagree. Plaintiff both inaccurately quotes and misconstrues the ALJ's statement. Plaintiff omits that the ALJ wrote

FINDINGS AND RECOMMENDATION – 15

"apart *possibly* from post-surgical periods. . . ." Nothing in the ALJ's statements or in the medical record as a whole establishes that Plaintiff was unable to engage in any substantial gainful activity because of any medically determinable physical or mental impairment for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the Plaintiff to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). Plaintiff here has not met that burden and the Commissioner's decision should be affirmed.

## Conclusion

A judgment should be entered AFFIRMING the decision of the Commissioner denying Plaintiff's application for benefits and DISMISSING this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due April 16, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 28th day March, 2012.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge